# IN THE UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF TENNESSEE
# NORTH DIVISION

| | |
|---|---|
| VIOLA MCELHANEY and, husband, ) <br> DOYLE MCELHANEY, ) <br> ) <br>     Plaintiffs, ) <br> ) <br> vs. ) <br> ) <br> WALMART, INC., WAL-MART STORES ) <br> EAST, LP, and WAL-MART REAL ) <br> ESTATE BUSINESS TRUST, ) <br> ) <br>     Defendants. ) | DOCKET No.: 3:22-cv-143 <br><br> JURY DEMANDED |

## COMPLAINT

Come the plaintiffs, Viola McElhaney, and husband, Doyle McElhaney, by and through counsel, and for this cause of action against the Defendants state as follows:

### I. NATURE OF CLAIM

1. The event giving rise to this cause of action and damages to the Plaintiffs was a trip and fall which occurred on April 21, 2021 negligently caused by Defendants at the Walmart Supercenter (hereafter referred to as "Walmart" or "the store") at 3051 Kinzel Way, Knoxville, TN 37924, also identified by Defendants as Facility Number 2310, operated jointly maintained and operated by defendants Walmart Inc., Wal-mart Stores East, LP; and Wal-Mart Real Estate Business Trust. Jurisdiction in this matter is based upon an amount in controversy and diversity of citizenship. 28 U.S.C. § 1332. Plaintiffs are citizens and residents of Tennessee. The Defendants are Deleware entities with principal places of business in Arkansas. The matter in controversy exceeds, exclusive of interest and costs, the sum of $75,000.00.

## II. PARTIES

2. Plaintiffs, Viola McElhaney and Doyle McElhaney, (also referred to collectively as "The McElhaneys"), were and are citizens and residents of Knox County, Tennessee at all times relevant to this action.

3. Defendant Walmart, Inc. is a Delaware for-profit corporation which owns and/or operates the Walmart Supercenter and the surrounding property at 3051 Kinzel Way, Knoxville, TN 37924, and jointly maintained and operated with the other defendants where the incident occurred, with its principal address and place of business located at 708 S.W. 8th St., Bentonville, Arkansas 72712-6209.

4. Defendant Wal-Mart Stores East, LP is a Delaware for-profit company which owns and/or operates the Walmart Supercenter and the surrounding property at 3051 Kinzel Way, Knoxville, TN 37924, and jointly maintained and operated with the other defendants where the incident occurred, with its principal address and place of business located at 702 S.W. 8th St., Bentonville, Arkansas 72712-6209.

5. Defendant Wal-Mart Real Estate Business Trust is a Delaware business trust which owns and/or operates the Walmart Supercenter and the surrounding property at 3051 Kinzel Way, Knoxville, TN 37924, and jointly maintained and operated with the other defendants where the incident occurred, with its principal address and place of business located at 708 S.W. 8th St., Bentonville, Arkansas 72712-6209.

6. All Defendants to this action referenced herein shall be referred to collectively as "defendants."

## III. FACTUAL STATEMENT AND CAUSE OF ACTION FOR NEGLIGENCE

7. On or about April 21, 2021, Plaintiff Viola McElhaney was being dropped off by her husband, Doyle McElhaney, at Walmart Supercenter at 3051 Kinzel Way, Knoxville, TN 37924 (hereafter "Walmart" or "Walmart Supercenter") near the front doors of the store.

8. The weather was sunny and pleasant at the time Mr. McElhaney dropped off Mrs. McElhaney at the Walmart Supercenter store.

9. On or about that same day and time, the purpose of Mrs. McElhaney's presence on the defendants' property was to shop at the Walmart Supercenter. Mrs. McElhaney was planning to buy a cell phone cover at Walmart for her cell phone.

10. After Mrs. McElhaney exited her husband's vehicle near the front doors of Walmart, she stepped from the front passenger side of her husband's vehicle and walked towards the concrete pedestrian area/ sidewalk around the store.

11. While walking towards the store Mrs. McElhaney was keeping a proper look out and awareness of her surroundings and was wearing shoes with good traction and support.

12. While Mrs. McElhaney was stepping towards the concrete walking area from the asphalt surface lot, Mr. McElhaney's was vehicle completely stopped.

13. As Mrs. McElhaney attempted to step onto the concrete pedestrian area/ sidewalk from the asphalt driving/ surface lot, the tip of her foot hit an uneven section where the asphalt surface lot/ driving area met the concrete pedestrian area/ sidewalk.

14. When Mrs. McElhaney's foot hit the raised edge of the concrete where it was uneven with the asphalt, it caused her to lose her balance and she started to fall.

15. When Mrs. McElhaney lost her balance and started to fall, she tried to balance herself and stop the fall, but she fell back and hit her head on the car and then fell to the ground and injured her leg.

16. At the place where Mrs. McElhaney's foot hit the edge of the concrete sidewalk, the edge of the concrete sidewalk was uneven with the asphalt surface lot, a condition negligently created and/or negligently allowed to exist by the Defendants.

17. Around the store at this area where the fall occurred there was no curb. The area was flush where the asphalt surface lot/ driving area met the concrete side walk/ walking area on either side of the area where Mrs. McElhaney fell.

18. However, at the area where Mrs. McElhaney fell, there was an area at along the edge of the concrete sidewalk that was uneven and well above the asphalt surface lot, creating an unreasonably dangerous tripping hazard. The concrete was high enough above the asphalt that it was able to catch the tip of Mrs. McElhaney's tip of her shoe and cause her to lose her balance and fall.

19. It was not readily apparent and/or open and obvious to Mrs. McElhaney that such a danger existed because other areas of the sidewalk were flush with the driving lot, with no curb extending around the front of the store.

20. As a result of the fall caused by the uneven area of the concrete sidewalk and asphalt driving lot, Mrs. McElhaney seriously injured her right leg and hip, including a fractured right femur. Mrs. McElhaney also injured other parts of her body as a result of the fall.

21. The Defendants created the hazardous condition as it was their concrete sidewalk in front of the store that was uneven and rose above their asphalt surface lot creating a dangerous tripping hazard.

22. At the location of the Mrs. McElhaney's fall there was no yellow paint and/or any other warning of the uneven rise of the edge concrete sidewalk above the asphalt surface.

23. The Defendants were on notice of the dangerous condition, and/or had every reason to be on notice of the dangerous condition, as they were the ones that created the hazardous condition, the tripping hazard.

24. Plaintiffs' aver that the close proximity of the area of the uneven edge of the concrete sidewalk above the asphalt surface lot to the front doors of the Walmart Supercenter, placed the Defendants on notice of the dangerous condition and/or created reason to know of the dangerous condition. Employees of Walmart certainly walked near and around the area every day leading up to Mrs. McElhaney's fall and injury.

25. The dangerous condition of the uneven area of the concrete sidewalk and asphalt surface lot was a mere estimated 20 to 25 feet away from the entrance to the store. Based on the location of the tripping hazard caused by the clearly been there for a sufficient amount of time for the Defendants to discover and/or be placed on notice of the dangerous condition and fix it.

26. The Defendants clearly would have had such knowledge of the uneven area of concrete above the asphalt because the area where it was located had a large amount of foot traffic at the location of the entrance and exit from the Walmart store, mere feet from the entrance and exit, unobstructed by any object.

27. Despite being on notice of a dangerous condition they created and/or having reason to be on notice, and having sufficient time to correct that hazardous condition of the property, the Defendants negligently failed to take any action to correct the dangerous condition created by the uneven sidewalk area.

28. The Defendants failed to take any action to adequately warn those visiting Walmart of the rise in the concrete sidewalk that could have easily been accomplished with yellow paint and/or other methods to warn those entering the store of the tripping hazard.

29. As owners and operators of the premises, who also maintained the premises, the Defendants had a duty to warn those on the premises of conditions on the property which were hazardous to life, health, or safety of their customers and/or invitees, such as Mrs. McElhaney.

30. As owners and operators of the premises, who also maintained the premises, the Defendants had a duty to remedy and/or correct any condition on the premises which was hazardous to life, health, or safety of their customers and/or invitees, such as Mrs. McElhaney.

31. At all times material hereto, the Defendants had a duty of care to keep the premises in a reasonably safe condition for the customers and/or invitees of Walmart, including Mrs. McElhaney.

32. The Plaintiffs assert that the Defendants acted in an unreasonable and negligent manner because they failed to take adequate steps to warn and remedy the dangerous condition on their premises, of which they were aware, and/or had adequate time to be aware given the nature of the danger, the separation of concrete and asphalt, prior to the fall.

33. The defendants and/or defendants' employees and/or defendants' agents negligently breached their duty to exercise reasonable care in the following ways, any one of which was a departure from the accepted standard of care owed by the defendants to the plaintiffs:

    a. Defendants and/or defendants' employees and/or defendants' agents failed to exercise reasonable care to repair and keep that premises in a reasonably safe and suitable

condition based on creating and/or ignoring and/or failing to timely remedy an unreasonably dangerous condition on their property of which they were aware and/or had reason to be aware;

    b.    Defendants and/or defendants' employees and/or defendants' agents failed to warn against a dangerous condition of which defendants knew and/or should have known and/or which they created;

    c.    Defendants and/or defendants' employees and/or defendants' agents recognized, and/or should have recognized, the great risk of injury due to falling the existed on the Defendants' premises and failed to timely act in a reasonable manner and period of time to remedy the hazardous condition.

## IV. DAMAGES

34.    As a result of the Defendants' negligence, Plaintiff Mrs. McElhaney has suffered serious personal injuries, some or all of which are permanent.

35.    Mrs. McElhaney's injuries were directly and proximately caused by the negligence of the Defendants.

36.    As a result of the Defendants' negligence, Plaintiff Viola McElhaney has been injured and damaged. Mrs. McElhaney's injuries and damages include but are not limited to:

    a.    Past, ongoing, and future medical bills and related expenses;

    b.    Past, ongoing, and future physical pain and suffering;

    c.    Mental and emotional injuries, mental trauma, mental distress, and mental anguish;

    d.    Scarring;

    e.    Loss of enjoyment of life;

    f.    Permanent impairment;

g. Miscellaneous inconvenience and expense, past, ongoing, and future;

h. Costs of this action;

i. All other general damages and other relief allowed under the laws of the State of Tennessee to which the Plaintiffs may be entitled.

37. Due to Defendants' negligence which directly and proximately caused his wife's injuries, Plaintiff Doyle McElhaney has suffered a loss of consortium with his wife, Plaintiff Viola McElhaney, due to loss of affection and support as a result of the injuries suffered by Mrs. McElhaney.

38. Particularly, after this incident occurred, Mr. McElhaney suffered a heart attack. Because of the incident giving rise to this lawsuit, Ms. McElhaney could not be at his side and the two were forced to be separated due to both requiring physical therapy and medical treatment at separate locations.

39. The injuries sustained by Mrs. McElhaney have seriously affected her ability to care for Mr. McElhaney supporting his claim for loss of consortium.

WHEREFORE, Plaintiff, Viola McElhaney, demands compensatory damages in an amount to be determined by the jury not to exceed Seven Hundred and Fifty Thousand Dollars ($750,000.00) plus court costs, discretionary costs, and any and all other costs of litigating and trying this matter and demands a jury to try this action.

WHEREFORE, Plaintiff, Doyle McElhaney, demands compensatory damages in an amount to be determined by the jury not to exceed One Hundred Thousand Dollars ($100,000.00) plus court costs, discretionary costs, and any and all other cost of litigating and trying this matter and demands a jury to try this action.

RESPECTFULLY SUBMITTED this 21st day of April, 2022.

/s/ Edward G. White, III
Edward Gibson White, III (BPR# 029924)
Attorney for Plaintiffs
422 S. Gay Street, Suite 302
Knoxville, Tennessee 37902
(865) 712-0963
trippwhitelaw@gmail.com

/s/ Eric B. Foust
Eric B. Foust (BPR# 029808)
Attorney for Plaintiffs
422 S. Gay Street, Suite 302
Knoxville, Tennessee 37902
(865) 250-5182
eric@foustlawfirm.com